T.C. Memo. 1999-314

UNITED STATES TAX COURT

STARVEST U.S., INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos.  16948-97, 17705-98,   Filed September 23, 1999.
1372-99.

David Finkelstein, for petitioner.

William R. McCants, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COUVILLION, Special Trial Judge:  These consolidated cases
are before the Court on the parties' motions to dismiss for lack
of jurisdiction.  In docket No. 16948-97, petitioner moves to
dismiss on the ground that the notice of deficiency is invalid
because it was not mailed to petitioner's last known address.
Respondent argues that the notice of deficiency was mailed to
petitioner's last known address.  In docket Nos. 16948-97 and

17705-98, respondent moves to dismiss for lack of jurisdiction on the grounds that petitioner, a corporation dissolved under State law, did not have the capacity to initiate the subject litigation and, if it had the capacity to do so, did not authorize the filing of the petitions with this Court.  In docket No. 1372-99, respondent moves to dismiss for lack of jurisdiction on the grounds that the petition was not filed timely and is duplicative of docket No. 17705-98.

## FINDINGS OF FACT

Some of the facts were stipulated.  Those facts and the accompanying exhibits are so found and are incorporated herein by reference.  Petitioner, a Florida corporation, had its principal place of business at Tierra Verde, Florida, at the time the petitions were filed.

Respondent determined the following deficiencies in petitioner's Federal income taxes, additions to tax, and penalties:

| Docket No. | Year | Deficiency | Additions To Tax and Penalties[1] | |
| | | | Sec. 6651(a)(1) | Sec. 6662 |
| --- | --- | --- | --- | --- |
| 16948-97 | FYE 5/31/92 | $ 100,580 | $ 25,145 | $ 20,116 |
| 17705-98 | FYE 5/31/93 | 906,913 | 226,728 | 181,383 |
| | FYE 5/31/94 | 1,049,839 | 262,460 | 209,968 |

Docket No. 1372-99 addresses the same tax years challenged in docket No. 17705-98.

Starvest U.S., Inc. (Starvest) was incorporated under the laws of Florida in 1987. Jacques de Bruijn served as president, secretary, and treasurer of Starvest at its inception, and the directors were Jacques de Bruijn and Mario Boon. Starvest adopted a fiscal tax year ending on May 31 of each year.

On November 6, 1995, Jacques de Bruijn, as president of Starvest, signed a power of attorney (Internal Revenue Service (IRS) Form 2848) authorizing Allen Swartz, C.P.A., to represent Starvest before the IRS for its tax years ending May 31, 1992, 1993, and 1994. These are the years before the Court in this litigation.

On April 30, 1996, Starvest elected new officers and directors. Mario Boon was elected to the offices of president, secretary, and treasurer. Mario Boon, Willem van Weert, and Maria Verstraeten were elected as directors of Starvest.

---

[1] Unless otherwise indicated, section references hereafter are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Additionally, attorney Warren Knaust was appointed as Starvest's registered agent.  Starvest's 1996 annual report to the Florida secretary of state[2] reflected the results of the officer and director elections.  The report also identified Warren Knaust as Starvest's registered agent.

Revenue Agent Denise Traum conducted the IRS audit of Starvest.  During the course of the audit, Jacques de Bruijn informed Agent Traum that he was no longer an officer or director of Starvest.  On January 14, 1997, Agent Traum requested in writing that Jacques de Bruijn produce copies of Starvest's corporate resolutions naming its officers and directors.  The letter explained that the information was needed to extend the period of limitations (IRS Form 872) for the tax years in question, as well as to complete a Tax Information Authorization (IRS Form 8821) in order that Agent Traum could continue to deal with Mr. de Bruijn during the audit.  Mr. de Bruijn complied with Agent Traum's request and provided documents identifying Starvest's officers and directors as those elected in April 1996.

On January 27, 1997, Mario Boon, as president of Starvest, signed IRS Form 8821 authorizing Jacques de Bruijn to receive confidential tax information on behalf of Starvest for its tax

---

[2]     The 1996 annual report was the last such report filed by Starvest with the Florida secretary of state.

years ending May 31, 1992, 1993, 1994, 1995, and 1996.[3] Subsequent to receiving the Tax Information Authorization, Agent Traum issued a letter and copy of the form to Mr. de Bruijn. The letter explained that the Tax Information Authorization allowed Mr. de Bruijn to inspect and receive confidential information relating to Starvest. The letter pointed out, however, that Mr. de Bruijn could not sign documents on behalf of the corporation unless a power of attorney was secured. Throughout the remainder of the audit, Agent Traum continued to deal with Mr. de Bruijn as Starvest's representative.

In November 1996, Warren Knaust resigned as Starvest's resident agent. Starvest failed to appoint another registered agent. On March 14, 1997, Starvest was administratively dissolved by the State of Florida for its failure to have a registered agent as required by Florida law.

On May 15, 1997, IRS issued a notice of deficiency (1997 notice of deficiency) to petitioner for its May 31, 1992, tax

---

[3] Form 8821, Tax Information Authorization, is authorization to IRS by a taxpayer designating any individual, corporation, firm, organization, or partnership to inspect and/or receive any confidential information regarding the taxpayer in any office of the IRS with regard to the tax and for the years or periods listed in the form. Form 8821, however, does not constitute authority to such designee to execute waivers, consents, closing agreements, or to otherwise represent the taxpayer before the IRS. Form 2848, Power of Attorney and Declaration of Representative, is the necessary form for such purposes.

year.  The notice was sent to Starvest at its Tierra Verde, Florida, address and to Allen Swartz, to whom Starvest had granted a power of attorney.  Subsequent to issuance of the notice of deficiency, Agent Traum issued a letter to Mario Boon, president of Starvest, at his address in The Netherlands, informing him of the issuance of the notice of deficiency and providing him with a copy of the audit report.  The letter indicated that the notice of deficiency had been sent to Starvest's corporate address in Tierra Verde, Florida.  The letter also indicated that Allen Swartz had reviewed the audit report.

Jacques de Bruijn retained the law firm of Gibbs and Runyan (Gibbs) to represent Starvest in matters relating to the 1997 notice of deficiency.  Gibbs filed a petition in the name of Starvest with this Court on August 12, 1997, for a redetermination of the taxes determined in the 1997 notice of deficiency.  That petition was filed as docket No. 16948-97.

In May 1998, Gibbs filed a motion to withdraw as Starvest's counsel.  In the motion, which was granted, Gibbs represented that Jacques de Bruijn was Starvest's president, and that all future correspondence should be addressed to him.  Subsequently, on June 18, 1998, Gibbs filed what was styled as a status report amending some of the statements made in the motion to withdraw. Gibbs represented that, while Mr. de Bruijn had originally

claimed to have authority to act on Starvest's behalf, Mr. de Bruijn now claimed that he was not and had never been an officer or director of Starvest.  Gibbs further represented that his firm had not had contact with any party related to petitioner other than de Bruijn and did not name any individual or party who had authority to represent Starvest.

On July 2, 1998, respondent filed a motion to dismiss for lack of jurisdiction in docket No. 16948-97 with respect to the 1997 notice of deficiency on the grounds that petitioner did not have the capacity to initiate the action because it was dissolved, and petitioner had not authorized any person to initiate such litigation.

Jacques de Bruijn then retained the law firm of Ruden, McClosky, et al. (Ruden) to represent Starvest in matters relating to the 1997 notice of deficiency.  On August 6, 1998, Ruden filed an opposition to respondent's motion to dismiss. Then, on August 11, 1998, Ruden filed a motion to dismiss for lack of jurisdiction on the grounds that the 1997 notice of deficiency had not been sent to petitioner's last known address. On November 4, 1998, Ruden filed a motion to withdraw as counsel for Starvest.  In this motion, counsel represented that Starvest could be contacted at (1) Tivoliweg 85B, 4561 HK Hulst, Netherlands, and (2) care of Jacques de Bruijn, 472 First Street

West, Tierra Verde, Florida, 33715.  This motion to withdraw was also granted.

On August 4, 1998, IRS issued a notice of deficiency (1998 notice of deficiency) to petitioner for its May 31, 1993, and 1994 tax years.  IRS sent copies of the notice to Starvest at its Florida address, to Jacques de Bruijn, to Alan Swartz, and to Mario Boon at his address in The Netherlands.

Jacques de Bruijn retained the law firm of Finkelstein and Associates (Finkelstein) to represent Starvest in regard to the 1997 notice of deficiency and the 1998 notice of deficiency. Finkelstein filed a petition in the name of Starvest with this Court on November 2, 1998, requesting a redetermination of the 1998 notice of deficiency.  That case is docket No. 17705-98.

On December 22, 1998, respondent filed a motion to dismiss docket No. 17705-98 for lack of jurisdiction on the same grounds as the motion to dismiss docket No. 16948-97; i.e., lack of capacity and authorization.

On January 19, 1999, another petition was filed in Starvest's name for the redetermination of the taxes determined in the 1998 notice of deficiency.  This petition was submitted by Mario Boon pursuant to the 1998 notice of deficiency he received at his address in The Netherlands.  That petition was filed as docket No. 1372-99.  Boon mailed the petition from his address in The Netherlands.

On March 5, 1999, respondent filed a motion to dismiss docket No. 1372-99 for lack of jurisdiction on the ground that the second petition filed with respect to the 1998 notice of deficiency was not filed timely, nor did petitioner, a dissolved corporation, have the capacity to file, nor did the person filing the petition have the authority to file on behalf of petitioner.

On March 16, 1999, the parties agreed to consolidate these cases for hearing on the parties' respective motions.

OPINION

This Court's jurisdiction to redetermine a deficiency is based upon the issuance of a valid notice of deficiency and a petition filed timely. See Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Normac, Inc. v. Commissioner, 90 T.C. 142, 147 (1988). In the cases here, the parties filed motions to dismiss for lack of jurisdiction as described above. Respondent contends petitioner lacked the capacity to file petitions because it had been dissolved under Florida law, and, even if petitioner had such capacity, it did not authorize the petitions filed in its name. Petitioner contends that the notice of deficiency with respect to the May 31, 1992, tax year was not sent to its last known address.

The question of jurisdiction is a fundamental question that can be raised at any time by either party or by the Court. See

Estate of Young v. Commissioner, 81 T.C. 879, 880-881 (1983).
When jurisdictional issues are raised, the Court has jurisdiction
to decide whether it has jurisdiction in the case.  Id. at 881.

1.  The Capacity of Starvest and the Authority To File the
Petitions on Behalf of Starvest

Respondent questioned this Court's jurisdiction on the
ground that petitioner, a dissolved Florida corporation, did not
have the legal capacity to file petitions in this Court.
Respondent further argued that, even if petitioner had the
capacity to file the petitions in this case, the petitions were
not filed by a person authorized to represent petitioner.

A case in this Court must be brought by the proper party.
See Rule 60(a)(1).  "This court does not have jurisdiction to
consider a petition filed by a person or entity not qualified by
law."  Mishawaka Properties Co. v. Commissioner, 100 T.C. 353,
362 (1993) (quoting 1983 Western Reserve Oil & Gas Co. v.
Commissioner, 95 T.C. 51, 62 (1990), affd. without published
opinion 995 F.2d 235 (9th Cir. 1993), and cases cited therein).
The capacity of a corporation to maintain litigation before this
Court is determined according to the law of the jurisdiction in
which the entity was organized.  See Rule 60(c).

Prior to 1989, Florida law provided that the "dissolution of
a corporation * * * shall not take away or impair any remedy
available to or against such corporation, or its directors,

officers, or shareholders for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 3 years after the date of such dissolution." See sec. 607.297(3), Florida Statutes (1988). This Court has previously held that the issuance of a notice of deficiency within the above mentioned 3-year period constitutes the commencement of an "action or other proceeding" under the Florida statute that preserves the right of the officers and directors to file valid petitions in this Court. See Bared & Cobo Co. v. Commissioner, 77 T.C. 1194 (1981); American Police & Fire Found., Inc. v. Commissioner, T.C. Memo. 1981-704.

In 1989, the Florida legislature made substantial changes to the State's corporate laws. The statutes relating to dissolved corporations were among those that were amended. Section 607.1405, Florida Statutes (1995), "Effect of dissolution", was amended to provide, in relevant part:

> (1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, * * *
>
> (2) Dissolution of a corporation does not:
>
> (a) Transfer title to the corporation's property;
>
> *       *       *       *       *       *       *
>
> (e) Prevent commencement of a proceeding by or against the corporation in its corporate name;

     \*        \*        \*        \*        \*        \*        \*

     (g)  Terminate the authority of the registered agent of the corporation.

Similarly, section 607.1421, Florida Statutes (1995), "procedure for and effect of administrative dissolution", was amended to provide, in relevant part:

     (3)  A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under s. 607.1405 and notify claimants under s. 607.1406.

     \*        \*        \*        \*        \*        \*        \*

     (5)  The administrative dissolution of a corporation does not terminate the authority of its registered agent.

While pre-1989 Florida law provided a 3-year limitation period for commencing actions in the name of a dissolved corporation, the amended Florida statutes do not require such a limitation.  A dissolved Florida corporation now continues in existence indefinitely to the extent necessary to wind up and liquidate its business and affairs, including the right to sue and be sued in its own name.  See Cygnet Homes, Inc. v. Kaleny Ltd., 681 So. 2d 826 (Fl. Dist. Ct. App. 1996).  Starvest, therefore, had the legal capacity to file petitions with this Court, even though it was dissolved at the time the petitions herein were filed.

Whether the filing of the petitions here was authorized or ratified by Starvest is a question of fact to be determined based on principles of agency. See Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978). "Authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so act on the principal's account." See 1 Restatement, Agency 2d, sec. 26 (1958). "Unless otherwise provided by statute, a written authorization is not necessary for the execution of a writing." See 1 Restatement, Agency 2d, sec. 30. The actions of a corporation are manifested through the actions of its corporate officers, directors, and employees, as well as through those acting on behalf of or at the direction of the aforementioned corporate representatives.

Starvest's current directors and officers have limited knowledge of the company. Further, they have limited involvement in the day-to-day operations of the business. The company does not appear to have had regular shareholder, board, officer, or other meetings. Instead, Starvest was operated and represented on a daily basis by Jacques de Bruijn.

While Mr. de Bruijn was the former president, secretary, treasurer, and director of Starvest, he held no official position with the corporation at the time the petitions in these cases

were filed.  There is, however, ample evidence in the record to conclude that Mr. de Bruijn was intimately involved in the daily workings and affairs of the corporation, regardless of his lack of official title.  Moreover, the record shows that Jacques de Bruijn was authorized to act on behalf of and to protect the interests of Starvest in its tax matters for the years at issue.

Jacques de Bruijn served as Starvest's president, secretary, and treasurer, and as one of Starvest's directors from the company's inception in 1987 until 1996.  Officer and director changes were formally made at Starvest in 1996, and Mr. de Bruijn ceased to have any official title with the corporation. Starvest's new officers and directors were all foreign nationals domiciled outside of the United States.  Mr. de Bruijn continued to represent the company and look after its affairs on a daily basis despite the management changes.

Starvest's president, Mario Boon, signed a Tax Information Authorization vesting Jacques de Bruijn with authority to receive and inspect confidential information relating to Starvest's tax matters for its 1992 through 1996 tax years.  Mr. de Bruijn acted as Starvest's representative during the IRS audit of the corporation.  Starvest's officers and directors did not have any contact with the IRS or involvement in the handling of the audit. When the notices of deficiency were issued, de Bruijn retained legal counsel to protect the corporation's interests.

Importantly, during this process, Starvest's officers and directors never indicated that Mr. de Bruijn's actions were inconsistent with their wishes or that his authority was limited in handling these matters. Moreover, one of Starvest's directors, Willem van Weert, testified at the hearing that Jacques de Bruijn had been given broad discretion to handle Starvest's tax matters for the years at issue.

In considering whether de Bruijn was authorized to cause petitions to be filed on behalf of Starvest, respondent has urged the Court to take into account the fact that Jacques de Bruijn was not an officer or director of the corporation at the time the petitions were filed. Respondent further points out that there was no power of attorney or other express grant of authority authorizing Jacques de Bruijn to sign documents or institute suit on behalf of Starvest. While no IRS power of attorney or other authorizing document was in effect with respect to Mr. de Bruijn, such forms are not required for a petition to be filed on behalf of a corporation in this Court. It suffices that a petition is authorized by an appropriate representative or agent of the corporation.

Although Starvest may not have been structured or operated in the mold of a typical business, it was nevertheless a legal entity that acted through and was bound by its representatives. The record clearly establishes that Jacques de Bruijn was

authorized to handle the affairs of and protect the interests of Starvest with respect to its tax matters for the years at issue, regardless of the title under which he acted. Causing the petitions to be filed in Starvest's name was among the duties that he performed on the corporation's behalf. Based upon the foregoing facts and the principles of agency, therefore, the Court holds that Jacques de Bruijn was authorized to cause the petitions in these cases to be filed on behalf of Starvest.

Even if the Court were to conclude that Starvest did not authorize Mr. de Bruijn to cause the petitions to be filed on its behalf, there is ample evidence that Starvest ratified the filing of the petitions. In this regard, this Court has held that a taxpayer can ratify a previously filed petition, even in the absence of express approval, through action or inaction implicitly approving the filing of the petition. See Mishawaka Properties Co. v. Commissioner, 100 T.C. 353 (1993); Kraasch v. Commissioner, supra.

In Kraasch v. Commissioner, supra at 627, 628, this Court found that the accountant, in filing the petition, "acted as the authorized agent of * * * [the taxpayers]" and that "even if this were a situation where * * * [the accountant] acted upon * * * [the taxpayers'] behalf without authority, * * * [the taxpayers] are still bound * * * because they subsequently ratified * * * [the accountant's] actions." The ratification was implied

because it was found to be based upon the taxpayers' conduct subsequent to the filing of the petition, even though the taxpayers had not expressly approved or authorized the act of filing or signing their names to the petition.  In reaching that conclusion, it was noted that the taxpayers were informed and knowledgeable about documents received from the Government and actions taken by their accountant.

The Kraasch rationale is rooted in concepts of agency and ratification.  In Kraasch, the person who signed the taxpayers' names was representing their interests before the IRS in the handling of their tax matters.  Even though the agent did not have specific authority to file a petition on their behalf, a petition was filed, the taxpayers were aware of it, and they were deemed to have ratified it.

Florida case law has long recognized that ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract entered into on his or her behalf by another without express authority.  See Deutsche Credit Corp. v. Peninger, 603 So. 2d 57 (Fla. Dist. Ct. App. 1992); Carolina Georgia Carpet & Textiles, Inc. v. Pelloni, 370 So. 2d 450 (Fla. Dist. Ct. App. 1979).  An agreement is deemed ratified where the principal has full knowledge of all material facts and circumstances relating to the act or transaction at the time of

ratification. See <u>Ball v. Yates</u>, 158 Fla. 521, 29 So. 2d 729 (1946); <u>Deutsche Credit Corp. v. Peninger</u>, <u>supra</u>.

Subsequent to Mr. de Bruijn's causing the second petition to be filed, Starvest's president, Mario Boon, filed a petition with this Court asking for a redetermination of the taxes determined in the 1998 notice of deficiency. Additionally, at the hearing on the motions here, one of Starvest's directors clearly stated that the company's directors and officers were aware of and approved of Mr. de Bruijn's causing the petitions to be filed. Further, this director testified that the company wished to challenge respondent's determinations in these matters.

The filing of the petition by Mr. Boon and the testimony of Starvest's director clearly indicate and satisfy the Court that Starvest desired to challenge respondent's determinations for the years at issue and approved of the actions of Mr. de Bruijn in causing the petitions to be filed. Therefore, as in <u>Kraasch v. Commissioner</u>, <u>supra</u>, and <u>Mishawaka Properties Co. v. Commissioner</u>, <u>supra</u>, the Court holds that a ratification was implied based upon the officers' and directors' conduct subsequent to the filing of the petitions, even if such officers and directors may not have expressly approved or authorized the act of filing the petitions.

2.  Last Known Address

A notice of deficiency is valid if the taxpayer actually receives the notice and thereafter files a petition timely with the Court.  See Frieling v. Commissioner, 81 T.C. 42, 52-53 (1983).  This rule applies regardless of the address to which the notice is mailed.  See id.

On August 12, 1997, petitioner filed a timely petition with the Court for the May 15, 1997, notice of deficiency.[4]  On November 2, 1998, petitioner filed a timely petition with the Court for the August 4, 1998, notice of deficiency.[5] Petitioner's actual receipt of the notices of deficiency and its subsequent filing of timely petitions with this Court render moot any inquiry regarding the address to which the notices of deficiency were mailed.  The notices of deficiency, therefore, were valid.

---

[4]     The 90-day period for filing a petition with the Court expired on Aug. 13, 1998, which was not a Saturday, Sunday, or legal holiday in the District of Columbia.  See sec. 7503.

[5]     The 90-day period for filing a petition with the Court expired on Nov. 2, 1998, which date was not a Saturday, Sunday, or legal holiday in the District of Columbia.  See sec. 7503. Although the petition was not received until Nov. 5, 1998, it was deemed filed on Nov. 2, 1998, under sec. 7502(a).

### 3.  Dismissal of Docket No. 1372-99

A petition was filed by petitioner on November 2, 1998, for redetermination of its 1993 and 1994 Federal income taxes based on the notice of deficiency dated August 4, 1998.  Said proceeding bears docket No. 17705-98 on the docket of this Court. On January 19, 1999, petitioner filed another petition with this Court, bearing docket No. 1372-99, also for redetermination of its 1993 and 1994 Federal income taxes, based on the same notice of deficiency dated August 4, 1998.

Since the latter petition, filed as docket No. 1372-99, duplicates the same notice of deficiency that is addressed in docket No. 17705-98, docket No. 1372-99 will be closed for duplication.

Orders will be issued denying respondent's motions to dismiss docket Nos. 16948-97, 17705-98, and 1372-99; denying petitioner's motion to dismiss docket No. 16948-97; and closing docket No. 1372-99 for duplication.